*In The*

*United States Court of Appeals*

*For The Eighth Circuit*

## No. 20-1487

UNITED STATES OF AMERICA

*Appellee,*

V.

WAKINYAN WAKAN MCARTHUR

*Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

**APPELLANT'S BRIEF**

| | |
|---|---|
| Frederick J. Goetz<br>GOETZ & ECKLAND P.A.<br>Banks Building<br>615 First Avenue N.E., Suite 425<br>Minneapolis, MN 55413<br>(612) 874-1552 | Andrew R. Winter<br>Assistant United States Attorney<br>600 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>(612) 664-5600 |
| *Attorney for Appellant* | *Attorney for Appellee* |

# SUMMARY OF THE CASE

Wakinyan Wakan McArthur was convicted of conspiracy to participate in racketeering activity, conspiracy to use and carry firearms during and in relation to a crime of violence, conspiracy to distribute and possess with intent to distribute controlled substances, distribution of controlled substances, and two counts of use and carrying of a firearm during and in relation to a crime of violence. See 18 U.S.C. §1962(d); 18 U.S.C. §924(o); 21 U.S.C. §841(a)(1) and (b)(1)(B); 18 U.S.C. §2, 18 U.S.C. §924(c). Over the course of two direct appeals and three sentencings, McArthur's convictions on the §924(o) count and the §924(c) counts were vacated and the initial sentence of a total term of imprisonment of 513 months was reduced to 420 months. McArthur now appeals this sentence as it resulted from clear errors in the application of the applicable advisory Guidelines. While the District Court did grant McArthur's motion for a downward variance, the Guidelines' errors were not harmless as the record does not show that the District Court would have imposed the same sentence without the errors. McArthur requests 10 minutes oral argument.

Appellate Case: 20-1487    Page: 2    Date Filed: 04/15/2020 Entry ID: 4902996

# TABLE OF CONTENTS

SUMMARY OF THE CASE .................................................................i

TABLE OF AUTHORITIES.................................................................iv

JURISDICTIONAL STATEMENT .....................................................1

STATEMENT OF THE ISSUES........................................................2

STATEMENT OF THE CASE .........................................................3

SUMMARY OF THE ARGUMENT ...................................................16

ARGUMENT .....................................................................................17

*I. Standard of Review* .................................................................17

*II. The District Court Clearly Erred in its Application of the*

*Sentencing Guidelines* .........................................................18

    A. <u>The District Court clearly erred in its drug quantity
determination as the evidence did not support the amount
found</u>..................................................................................18

    B. <u>No enhancement is warranted for maintaining a stash house as
McArthur did not maintain the residence and any drug activity
while he stayed there was incidental to the primary use as a
dwelling</u>..............................................................................22

    C. <u>McArthur did not engage in a pattern of criminal conduct as a
livelihood</u>.............................................................................29

*III.   The error in the Guidelines calculation was not harmless*...31

Appellate Case: 20-1487    Page: 3    Date Filed: 04/15/2020 Entry ID: 4902996

CONCLUSION.................................................................33

CERTIFICATE OF COMPLIANCE.....................................34

iii

# TABLE OF AUTHORITIES

**Cases**

*Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed. 2d 214 (2013)..................................................................................................20

*United States v. Allen*, 440 F.3d 449 (8th Cir. 2006) .............................19

*United States v. Davis*, 139 S.Ct. 2319 (2019)....................................9, 10

*United States v. Flores,* 362 F.3d 1030 (8th Cir. 2004).........................23

*United States v. Flores-Olague,* 717 F.3d 526 (7th Cir. 2013) ..... 24, 25, 26

*United States v. Garcia,* 774 F.3d 472 (8th Cir. 2014) ............................25

*United States v. Harris,* 390 F.3d 572 (8th Cir. 2004) ...........................32

*United States v. Johnston,* 533 F.3d 972 (8th Cir.2008) ........................31

*United States v. Lawrence*, 854 F.3d 462 (8th Cir. 2017) ............ 2, 19, 20

*United States v. Mannings*, 850 F.3d 404 (8th Cir. 2017) ........... 2, 17, 19

*United States v. Mashek,* 406 F.3d 1012 (8th Cir.2005) ........................31

*United States v. McArthur,* 850 F.3d 925 (8th Cir 2017)..................7, 12

*United States v. McArthur*, 2019 WL 3776445 (8th Cir. 2019)...........2, 9

*United States v. Miller,* 698 F.3d 699 (8th Cir. 2012)........ 2, 23, 24, 27, 28

*United States v. Nolder*, 887 F.2d 140 (8th.Cir.1989).......................3, 30

*United States v. Renteria-Saldana*, 755 F.3d 856 (8th Cir. 2014).........29

*United States v. Spikes*, 543 F.3d 1021 (8th Cir. 2008) ............. 18, 31, 33

Appellate Case: 20-1487    Page: 5    Date Filed: 04/15/2020 Entry ID: 4902996

*United States v. Sykes,* 854 F.3d 457 (8th Cir. 2017)..........................25, 26

*United States v. Villareal*, 567 Fed. Appx. (8th Cir. 2014) ....................23

*United States v. Yellow Horse*, 774 F.3d 493 (8th Cir. 2014) ..........18, 19

**Statutes**

18 U.S.C. §2 .........................................................................................i, 4

18 U.S.C. §924(c) ...............................................................................i, 2

18 U.S.C. §924(c)(1)(A) .........................................................1, 4, 5, 9

18 U.S.C. §924(c)(3) ...............................................................................9

18 U.S.C. §924(o) ..........................................................................i, 1, 4

18 U.S.C. §1959(a)(3) ............................................................................4

18 U.S.C. §1959(a)(5) ............................................................................4

18 U.S.C. §1962(d) .......................................................................i, 1, 4

18 U.S.C. §3231 .....................................................................................1

18 U.S.C. §3553(a)................................................................................7

18 U.S.C. §3742 .....................................................................................2

21 U.S.C. §841(a)(1).................................................................i, 1, 4, 18

21 U.S.C. §841(b)(1)(A)..............................................................i, 4, 18

21 U.S.C. §841(b)(1)(B)...............................................................1, 4, 18

21 U.S.C. §841(b)(1)(C).....................................................................1, 4

Appellate Case: 20-1487     Page: 6     Date Filed: 04/15/2020 Entry ID: 4902996

21 U.S.C. §846 ............................................................................4

21 U.S.C. §856(a)(1) ..............................................................23

28 U.S.C. §1291 ........................................................................2

29 U.S.C. §206(a)(c) ..............................................................31

**Other Authorities**

U.S.S.G. §2D1.1.......................................................2, 5, 20, 21

U.S.S.G. §2D1.1(b)(12) ..................... 3, 5, 22, 23, 24, 25, 28, 30

U.S.S.G. §2D1.1(b)(15)(E) ............................. 3, 5, 10 30, 32

U.S.S.G. §2D1.1(c) .................................................................18

U.S.S.G. §2D1.1(c)(4) ...........................................................15

U.S.S.G §2D1.1(c)(5)..............................................................20

U.S.S.G. §2D1.1(c)(7) ...........................................................15

U.S.S.G. §2D1.1. Commentary, Application Note 8 (D) .........20

U.S.S.G. §2D1.1, Commentary, Application Note 17 ........23, 24

U.S.S.G. §2D1.1, Application Note 19 ...................................30

U.S.S.G. §3D1.4........................................................................6

U.S.S.G. §4B1.3 ......................................................................31

U.S.S.G. §4D1.3 ......................................................................30

U.S.S.G. Chapter 5, Part A, Commentary, Application Note 2.................7

# JURISDICTIONAL STATEMENT

Wakinyan Wakan McArthur was charged with violations of 18 U.S.C. §1962(d); 18 U.S.C. §924(o); 21 U.S.C. §§841(a)(1), (b)(1)(B) and (b)(1)(C); and 18 U.S.C. §924(c)(1)(A).  Jurisdiction in the District Court was founded on 18 U.S.C. §3231 as McArthur was charged with offenses against the laws of the United States.  A jury trial was held before the Honorable John R. Tunheim, United States District Court Judge for the District of Minnesota, commencing on January 24, 2013 and concluding on March 19, 2013 with guilty verdicts on the above offenses.  On September 30, 2014, Mr. McArthur was sentenced by Judge Tunheim to a total term of imprisonment of 516 months.  Judgement was entered on October 8, 2014.  McArthur initially appealed his convictions on Counts 10 and 11, the two §924(c) counts, to the United States Court of Appeals for the Eighth Circuit. This Court vacated McArthur's conviction on Count 11, affirmed his remaining convictions, vacated his entire sentence, and remanded for resentencing. On May 31, 2017, Chief Judge Tunheim resentenced McArthur to a total term of imprisonment of 480 months. The Amended Judgment in a Criminal Case was filed on June 6, 2017.  McArthur again appealed. In *United*

1

*States v. McArthur,* 2019 WL 3776445 (8th Cir. 2019); this Court vacated McArthur's remaining §924(c) conviction, Count 10, vacated his entire sentence under the sentencing package doctrine, and remanded for resentencing. On February 24, 2020, Chief Judge Tunheim resentenced McArthur to a total term of imprisonment of 420 months. The Re-Sentencing Judgment in a Criminal Case was filed on February 28, 2020. McArthur's Notice of Appeal was timely filed on March 6, 2020. This Court's jurisdiction is based on 18 U.S.C. §3742 and 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1. What quantity of drugs is the defendant responsible for under U.S.S.G. §2D1.1?

   **The District Court found Appellant responsible for between 1,000 and 3,000 kilograms of marijuana equivalent.**

   Apposite Authorities:

   *United States v. Lawrence,* 854 F.3d 462 (8th Cir. 2017)
   *United States v. Mannings,* 850 F.3d 404 (8th Cir. 2017)

2. Whether the defendant ever maintained a "stash house" so as to subject him to a 2-level enhancement under U.S.S.G. §2D1.1(b)(12)?

   **The District Court found the enhancement applied.**

Apposite Authorities:

U.S.S.G. §2D1.1(b)(12)
*United States v. Miller*, 698 F.3d 699 (8th Cir. 2012)
*United States v. Flores-Olaque*, 717 F.3d 526 (7th Cir. 2013)

3. Whether an offense level increase is warranted under

   §2D1.1(b)(15)(E) for committing the offense as part of a pattern of

   criminal conduct engaged in as a livelihood?

   **The District Court found the enhancement applied.**

   Apposite Authorities:

   U.S.S.G. §2D1.1(b)(15)(E)
   *United States v. Nolder,* 887 F.2d 140 (8th Cir. 1989)

## STATEMENT OF THE CASE

1. <u>Procedural History</u>

   Wakinyan Wakan McArthur was charged in a Redacted Superseding

Indictment with the following offenses:

- Count 1: Conspiracy to participate in racketeering activity in

  violation of 18 U.S.C. §1962(d);

- Count 2: Conspiracy to use and carry firearms during and in

  relation to a crime of violence in violation of 18 U.S.C. §1962(d) and

  18 U.S.C. §924(o);

3

- Count 3: Attempted murder in aid of racketeering in violation of 18 U.S.C. §1959(a)(5) and 18 U.S.C. §2;

- Count 4: Assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. §1959(a)(3) and 18 U.S.C. §2;

- Count 5: Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A);

- Count 7: Conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(A), (b)(1)(B), (b)(1)(C) and 21 U.S.C. §846;

- Count 8: Aiding and abetting distribution of a controlled substance in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C);

- Count 9: Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A);

- Count 10: Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A); and

- Count 11: Use and carrying of firearm during and in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A).

(See District Court Docket ("DCD") DCD No. 1060-4).

The case came on for trial before the Honorable John R. Tunheim, Judge of the United States District Court for the District of Minnesota (now Chief Judge), beginning on January 24, 2013.  On March 19, 2013, the jury returned its verdict finding McArthur not guilty of counts 3, 4, 5, and 9 but convicting him on counts 1, 2, 7, 8, 10, and 11.

McArthur raised a number of objections to the presentence investigation report (PSR) including as to drug quantity under U.S.S.G. §2D1.1, the application of the "stash house" enhancement under U.S.S.G. §2D1.1(b)(12), and the application of the pattern of criminal conduct engaged in as a livelihood enhancement under U.S.S.G. §2D1.1(b)(14).[1] (DCD  No. 1382  pp. 1, 3).

The case came on for sentencing before Judge Tunheim on September 30, 2014.  Following an evidentiary hearing, the District Court denied McArthur's objections as to the above Guidelines factors. (See Sentencing Transcript from hearing of September 30, 2014, hereafter "ST 1," at pp. 102-104, 106). As to drug quantity, the district court found that the conspiracy involved the equivalent of between 1,000 and 3,000 kilograms of marijuana. (ST 1 at p. 102).

---

[1] The enhancement is now found at U.S.S.G. §2D1.1(b)(15)(E).

5

For Count Group 1, the racketeering activity, the District Court found the base offense level was 33, there was a four-level increase for McArthur's leadership role in the offense, and a two-level increase for obstruction of justice. (ST 1 at p. 105). This calculation yielded an adjusted offense level on Count Group 1 of 39. (Id.) The same factors led to an adjusted offense level of 39 as to Count Groups 2 and 3. (ST 1 at pp. 105-106).

As to Count Group 4, involving the distribution of controlled substances, namely cocaine and cocaine base; the District Court found the base offense level was 32 based on drug quantities, applied a two-level increase for possession of a firearm, a two-level increase because of the credible threat to use violence, a two-level increase for maintaining the premises for purposes of manufacturing or distributing a controlled substance, a two-level increase because of the offense being a part of a pattern of criminal conduct, a two-level increase for the use of minors, a four-level increase for role in the offense as a leader, and a two-level increase for obstruction of justice. (ST 1 at p. 106). That yielded a total offense level of 48. (ST 1 at p. 106). Under the multiple count adjustment analysis of U.S.S.G. §3D1.4, the District Court added an additional point

6

bringing the total offense level to 49. (ST 1 at p. 107). The District Court then reduced the offense level to 43 under U.S.S.G. Chapter 5, Part A, Commentary, Application Note 2. (Id.). Finding that McArthur was in criminal history category III, the District Court determined the advisory Guidelines' range was life imprisonment. (ST 1 p. 107).

Considering the factors of 18 U.S.C. §3553(a), the District Court then granted McArthur's motion for a downward variance and imposed a total sentence of 516 months imprisonment. (ST 1 pp. 121-122). The breakdown of the sentence was 156 months imprisonment on Counts 1, 2 and 8; 60 months on Count 7; 60 months on Count 10 and 300 months on Count 11 with the sentences on Counts 1, 2 and 7 to be served concurrently to one another and the sentences on Counts 10 and 11 to be served consecutively. (Id).

McArthur appealed his convictions on Counts 10 and 11 to the United States Court of Appeals for the Eighth Circuit. In its opinion filed on February 24, 2017, the Eighth Circuit vacated McArthur's conviction on Count 11, affirmed his remaining convictions, vacated McArthur's entire sentence, and remanded for resentencing. *United States v. McArthur,* 850 F.3d 925, 943 (8th Cir. 2017).

7

The case came on for resentencing before Chief Judge Tunheim on May 30 and 31, 2017. Prior to resentencing McArthur reaffirmed and renewed all of his prior objections as set forth in his initial position pleading as to sentencing with the exception of those as to Count 11 which had been vacated. (DCD 1710 p. 3). McArthur maintained his prior Guidelines objections at the resentencing hearing. (See Sentencing Transcripts from May 30-31, 2017, hereafter "ST 2," at p. 98). The District Court overruled the objections but noted they were preserved. (Id.). The District Court then adopted the factual statements in the Revised Presentence Report, hereafter "RPSR." (ST 2 p. 99). The District Court determined the Guidelines calculations were unchanged with the exception being as to Count Group four which had a base offense level of 30 due to intervening amendments to the Guidelines as to drug quantity. (Id.) The total adjusted offense level remained 49 which was reduced to 43. (Id.). With a criminal history category of III, McArthur's advisory Guidelines' range remained life imprisonment. (Id).

The District Court then again varied downward from the advisory Guidelines range to a total term of imprisonment of 480 months. (ST 2 pp. 142-143). The District Court imposed a sentence of 240 months on

8

Counts 1, 2 and 8 and a 420-month sentence on Count 7, all to be served concurrently, and a 60-month consecutive sentence on Count 10. (ST 2 p. 144).

McArthur again appealed his convictions and sentence to the Eighth Circuit Court of Appeals. McArthur's issues in his second appeal included that his conviction on Count 10 for violating 18 U.S.C. §924(c)(1)(A) was invalid as the predicate offense, the RICO conspiracy charged in Count 1, was not a "crime of violence" under 18 U.S.C. §924(c)(3). In an opinion filed on August 12, 2019, this Court vacated McArthur's remaining §924(c)(1)(A) conviction agreeing that, under *United States v. Davis,* 139 S.Ct. 2319 (2019), the RICO conspiracy in Count 1 was not a predicate "crime of violence." *United States v. McArthur,* 2019 WL 3776445 (8th Cir. 2019) (*McArthur* II). The Eighth Circuit again vacated McArthur's entire sentence under the sentencing package doctrine and remanded for resentencing. Id.

The case came on for the second resentencing before Chief Judge Tunheim on February 24, 2019. Prior to resentencing McArthur moved to vacate his conviction on Count 2, conspiracy to use or possess firearms in the course and furtherance of a crime of violence under 18 U.S.C.

9

§924(o), as the charged predicate offense, the RICO conspiracy, was not a crime of violence under *Davis* as well as the Eighth Circuit's holding in *McArthur* II. The Government did not oppose the motion and the District Court dismissed Count 2 at the resentencing. (See Resentencing Transcript, February 24, 2020, ("RST") at p. 3).

As to his sentence, McArthur reaffirmed his objections to the Guidelines' calculations in particular to drug quantity, to the "stash house" enhancement under U.S.S.G. §2D1.1(b)(12), and to the enhancement for "criminal livelihood" under U.S.S.G. §2D1.1(b)(15)(E). DCD No. 1966 at pp. 17-18. The District Court overruled the objections but noted they were preserved. (RST p. 6). The District Court maintained its earlier rulings on these contested Guidelines' issues. (RST pp. 3-6). With respect to the Guidelines, the District Court made the following findings:

- Count 1 (RICO)/Count Group 1 (racketeering activity): base offense level 33, four level increase for role in the offense, two-level increase for obstruction of justice, yielding adjusted offense level of 39. (RST p. 6)

- Count 1 (RICO)/Count Group 2 (racketeering activity): base offense level 33, four level increase for role in the offense, two-level increase for obstruction of justice, yielding adjusted offense level of 39. (RST pp. 6-7).

- Count 1 (RICO)/Count Group 3 (racketeering activity): base offense level 33, four level increase for role in the offense, two-level increase for obstruction of justice, yielding adjusted offense level of 39. (RST p. 7).

- Count 1 (RICO) and Count 7 (conspiracy to distribute cocaine) and Count 8 (distribution of cocaine)/Count Group 4 (drugs conspiracy): base offense level 30, two level increase for possession of firearm, two-level increase for threat to use violence, two-level increase for stash house, two-level increase for pattern of criminal conduct, two-level increase for use of a minor, four level increase for role in the offense, two-level increase for obstruction of justice, yielding adjusted offense level of 46. (RST p. 7)

- Multiple Count Adjustment: additional three-level increase resulting in total offense level of 49, treated as total offense level of 43. (RST p. 7).

With a criminal history category of III, McArthur's advisory Guidelines' range remained life imprisonment. (RST p. 8). The District Court noted, however, that the advisory Guideline range for each of the remaining three counts of conviction was impacted by the respective statutory maximum sentence which, for Counts 1 and 8 was 240 months and for Count 7 was 420 months. (RST pp. 8-9).

The District Court then again varied downward from the advisory Guidelines' range to a total term of imprisonment of 420 months. (RST pp. 41-44). The District Court imposed a sentence of 240 months imprisonment on Counts 1 and 8 and a sentence of 420-months imprisonment on Count 7, all to be served concurrently. (RST p. 41).

2. <u>Facts relevant to issue submitted for review</u>

Appellant respectfully refers the Court to its discussion of relevant facts in its opinion in *United States v. McArthur,* 850 F.3d 925, 931-933 (8th Cir. 2017). In addition thereto, Appellant notes the following.

Kenneth Roberts was a former Native Mob member who testified for the government at trial. Roberts testified that he purchased between 1/8 of an ounce and an ounce of crack cocaine directly from McArthur on four

to five occasions. (TT pp. 2344-2345).[2] In the spring of 2010, Roberts testified that McArthur, "Kon," was in possession of nine ounces of powder cocaine. (TT p. 2354). Roberts also testified that he saw McArthur give one ounce of crack cocaine to a Jeremy Neadeou. (TT p. 2355).

Roberts knew that drugs were stored in a "white house" in Cass Lake, Minnesota. (TT. P. 2346). This was Chris Wuori's house. Id. The house belonged to Chris Wuori's father, Rick Wuori, Sr. (TT p. 4833). Roberts described the house as "Chris Wuori's white house." (TT p. 2422, see also pp. 2526, 2531). Other Native Mob members testifying for the government at trial confirmed the "white house" was Christopher Wuori's house. (TT. p. 3312; see also pp. 4278-4279 (Witness Amanda Carlson testifying that Chris Wuori lived at a place called the "white house" on Maple Street in Cass Lake)).

Roberts saw Wuori cooking cocaine into crack at his house. (TT. Pp. 2347-2348). During the period 2009, 2010 Roberts saw other Native Mob gang members at the house including McArthur. (TT p. 2347-2349).

---

[2] "TT" references the trial transcript by page number.

Dwight Jones was another former Native Mob member who testified for the government. Jones testified that in 2009 and 2010 he was getting cocaine and crack cocaine from "Little White," also known as Christopher Wuori. (TT p. 4577). Jones knew that Wuori had his own house in Cass Lake, a "white house" across the street from a school. (TT p. 4579).Jones also testified that he saw McArthur in possession of drugs a couple of times in the summer of 2009, a couple ounces of crack cocaine. (TT p. 4580). Jones also told agents that he had never seen McArthur with drugs. (TT p. 4644). Jones also acknowledged that McArthur usually didn't touch drugs. (Id.)

Dale Pindegayosh was another cooperating former Native Mob member who testified on behalf of the government at trial. Pindegayosh testified that he made trips with Christopher Wuori to pick up drugs (powder cocaine) 15 times within a two-year period. (TT p. 5679). Pindegayosh testified sometimes they would get a kilo and would return to Cass Lake and "cook it all up." (TT p. 5680). Sometimes the cooking would take place in the "white house." (Id). McArthur told Pindegayosh he pooled money for drugs. (TT p. 5683). Pindegayosh testified

McArthur was present at the "white house" when Wuori was cooking up the crack cocaine. (TT p. 5683).

Pindegayosh also testified about a search warrant that was executed at the "white house" in February of 2011. (TT p. 5689). McArthur stayed there at the time. Id. No evidence was introduced at trial that any drugs were found. Pindegayosh testified that McArthur lived with his mother at a different residence in 2009-2010 but for a while "shared" Wuori's "white house" with him. (TT p. 5642).

Christopher Wuori was still living at his "white house" at 316 Maple in Cass Lake on or about May and June 2011 when law enforcement used an informant to purchase cocaine. (TT pp. 4801-4815). While McArthur was involved in two of these sales in May, he was not at the "white house" during either of them nor did the evidence show he was staying at this residence at that time. (TT. pp. 4801-4804, 4805-4813). The sale on June 14 did not involve McArthur nor did it happen at the "white house" but took place at the informant's residence a few blocks away. (TT pp. 4814-4815).

On January 24, 2012, McArthur's home on Grant Utley Avenue was thoroughly searched. (TT pp. 5524, 5534-5535). The only drugs found

Appellate Case: 20-1487    Page: 22    Date Filed: 04/15/2020 Entry ID: 4902996

was a small amount of marijuana consistent with personal use. (TT pp. 5534-5535). No other drugs were located anywhere in the residence. (TT p. 5534). Also, law enforcement did not find anything during their extensive search of the residence that was associated with drug distribution. (TT p. 5535).

Evidence was also introduced at trial, and summarized in the Third Revised Presentence Report (RPSR3), about a December 2010 Native Mob council meeting in which McArthur is heard telling other Native Mob members that they can cut their drugs up at his "crib." (RPSR3 ¶269). McArthur does not dispute he was staying at the "white house" at this time. The PSR determined that an enhancement was warranted under §2D1.1(b)(12) on the basis that "(i)n this offense, the defendant was recorded encouraging members of the Native Mob gang to use his residence to prepare drugs for distribution." (RPSR3 ¶343).

## SUMMARY OF ARGUMENT

The District Court erred in its factual findings as to drug quantity and whether McArthur maintained a premises for the purpose of manufacturing or distributing a controlled substance. The District Court also incorrectly applied the enhancement for engaging in a

Appellate Case: 20-1487    Page: 23    Date Filed: 04/15/2020 Entry ID: 4902996

pattern of criminal conduct as a livelihood to the facts. Collectively, these errors resulted in a ten-level increase in McArthur's adjusted offense level under the Guidelines. The error was not harmless as McArthur's advisory guidelines range when properly calculated would have been 324 months to 405 months imprisonment rather than life imprisonment and the District Court did not indicate that it would have imposed the same sentence, a total sentence of 420 months, if appellant's objections on these Guidelines' factors were sustained. Appellant therefore requests that his sentence be vacated and the case remanded for resentencing.

## ARGUMENT

### I. *Standard of Review*

The Court of Appeals reviews the district court's application of the Guidelines to the facts de novo; its factual findings for clear error; and the ultimate sentence for reasonableness. *United States v. Mannings*, 850 F.3d 404, 408 (8th Cir. 2017). "A failure to properly calculate the advisory Guidelines range is a significant procedural error, and '[a] non-harmless error in calculating the guidelines range requires a remand

17

for resentencing.'" *United States v. Spikes*, 543 F.3d 1021, 1023 (8th Cir. 2008) (citation omitted).

## II. *The District Court Clearly Erred in its Application of the Sentencing Guidelines.*

A. <u>The District Court clearly erred in its drug quantity determination as the evidence did not support the amount found.</u>

The base offense level for the pseudo Count Four in Count 1 and the offense in Count 7, conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B), is determined by reference to the Drug Quantity Table. U.S.S.G. § 2D1.1 (c). The government bears the burden of establishing drug quantity and sentencing enhancements by a preponderance of the evidence. *Mannings,* 850 F.3d at 408. The Court of Appeals reviews the district court's determination of drug quantity for clear error, "applying the preponderance-of-the-evidence standard." *United States v. Yellow Horse*, 774 F.3d 493, 496 (8th Cir. 2014). Appellant faces an "uphill battle" challenging the district court's determination of drug quantity on appeal as this Court "will reverse ... only if the entire record

Appellate Case: 20-1487    Page: 25    Date Filed: 04/15/2020 Entry ID: 4902996

definitely and firmly convinces [the Court] that a mistake has been made." *United States v. Allen*, 440 F.3d 449, 452 (8th Cir. 2006).

While in a drug trafficking conspiracy a sentencing court may consider reasonably foreseeable transactions of others, the scope of such relevant conduct is not without limits. *Yellow Horse*, 774 F.3d at 496. As this Court recently observed in *United States v. Lawrence*, 854 F.3d 462 (8th Cir. 2017):

> Relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S. Sentencing Guidelines §1B1.3(a)(2). "In drug conspiracies, the district court may consider amounts from other drug transactions, provided the other dealings are part of the same course of conduct or scheme." *United States v. Bieri*, 21 F.3d 811, 817 (8th Cir. 1994). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. §1B1.3 cmt. n.5(B)(i). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other." Id. §1B1.3 cmt. n.5(B)(ii). Courts consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses.... The nature of the offenses may also be a relevant consideration." Id.

*Lawrence*, 854 F.3d at 467-468.

Here, the jury made specific findings that McArthur was responsible for the distribution of less than 500 grams of cocaine and 28

grams or more but less than 280 grams of cocaine base. McArthur cannot be held responsible for any drug amounts greater than those found by a jury beyond a reasonable doubt as to do so would violate the Sixth Amendment of the United States Constitution and run contrary to the command of *Alleyne v. United States*, 570 U.S. 99, 103, 133 S.Ct. 2151, 186 L.Ed.2d 314(2013).

While the jury's findings cap the amount of drugs that can be used to determine McArthur's base offense level under §2D1.1(a)(5), further findings by the District Court were required to determine the amount of drugs that McArthur should be held responsible for and the corresponding base offense level within the amounts found by the jury. The PSR concluded that McArthur should be held responsible for the greatest amount of drugs that could still be consistent with the jury's findings: 499 grams of cocaine and 279 grams of cocaine base. RPSR3 ¶ 340. Applying the Drug Equivalency Tables of §2D1.1 Application Note 8 (D), the RPSR3 concluded that McArthur is responsible for 1,096.1 kilograms of marijuana which, pursuant to §2D1.1(c)(5), results in a base offense level of 30 as the amount of drugs is between 1,000 and 3,000 kg of marijuana. RPSR3 ¶340.

Appellate Case: 20-1487    Page: 27    Date Filed: 04/15/2020 Entry ID: 4902996

In the case at bar there was little evidence to show that McArthur himself was involved in the sale of cocaine or cocaine base in quantities beyond the minimum under the jury's findings. While Christopher Wouri was involved in greater weights of cocaine, most of this activity was not connected with McArthur. McArthur was certainly around while some of this activity occurred and was directly involved in some sales for small amounts of cocaine in May and June of 2011. However, what Wouri sold and distributed beyond that was his own business and not part of any common scheme or plan or the same course of conduct.

The District Court found that the government proved that the conspiracy involved the equivalent of between 1,000 and 3,000 kilograms of marijuana. (ST 1 at p. 102; ST 2 at pp. 99-100). This was the greatest amount of drugs that was still consistent with the jury's findings: 499 grams of cocaine and 279 grams of cocaine base. Because Christopher Wuori's drug dealing in large part is not fairly attributable to McArthur, this finding was in error.

21

B. <u>No enhancement is warranted for maintaining a stash house as McArthur did not maintain the residence and any drug activity while he stayed there was incidental to the primary use as a dwelling.</u>

§2D1.1(b)(12) of the Guidelines provides for a two-level offense level increase "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." Note 17 of the Commentary to §2D1.1 more fully explains this enhancement stating in pertinent part as follows:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises…for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purposes of distribution.

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

Appellate Case: 20-1487    Page: 29    Date Filed: 04/15/2020 Entry ID: 4902996

U.S.S.G. §2D1.1, Commentary, Application Note 17 (2018).

In order to support a two-level enhancement under U.S.S.G. §2D1.1 (b)(12), the Government must establish that drug dealing was a <u>major</u> purpose for which the <u>defendant</u> maintained the premises. *United States v. Villareal*, 567 Fed. Appx. 467, 471 (8th Cir. 2014). The government bears the burden of proving all sentencing enhancements by a preponderance of the evidence. *United States v. Flores,* 362 F.3d 1030, 1037 (8th Cir. 2004).

Defendant acknowledges that just because a premises is someone's home, and therefore by definition a place used 100% of the time for a lawful purpose, this does not mean that the premises could not otherwise be a "stash house" within the meaning of §2D1.1(b)(12). *United States v. Miller,* 698 F.3d 699, 706-707 (8th Cir. 2012). In *Miller,* the Eighth Circuit looked to the "crack house" statute, 21 U.S.C. §856(a)(1), in interpreting §2D1.1(b)(12) as Congress directed the sentencing guidelines commission to adopt the "stash house" enhancement when it enacted §856. Id.

Looking to decisions upholding §856 convictions as a guide, the Eighth Circuit noted that a home can become a "crack house" within the meaning

Appellate Case: 20-1487    Page: 30    Date Filed: 04/15/2020 Entry ID: 4902996

of §856 where a "defendant used the premises in question as a primary residence as well as for substantial drug trafficking." *Miller,* 698 F.3d at 707. Thus, the Eighth Circuit concluded that the "stash house" enhancement applies "when a defendant uses the premises for the purposes of substantial drug trafficking activities, even if the premises was also her family home at the times in question." Id.

Evidence of "substantial drug trafficking activities" in *Miller* included four controlled buys from the Miller residence as well as other sales of methamphetamine occurring at the premises. Id at pp. 702-703. Additional evidence supporting application of the enhancement included that Mr. Miller, who resided at the premises, admitted distributing massive quantities of methamphetamine over the course of six years and telling his drug customers they would find methamphetamine in various locations around the premises as well as evidence that he kept records related to his drug distribution activities at his home. Id at 706.

In *United States v. Flores-Olague,* 717 F.3d 526 (7th Cir. 2013); the Seventh Circuit found the Eighth Circuit's decision in *Miller* informative and persuasive in determining when the "stash house" enhancement of §2D1.1(b)(12) applies. In determining whether a family home could also

be a "stash house," the Seventh Circuit considered both the frequency and significance of the illicit activities conducted on the premises. *Flores-Olague,* 717 F.3d at 533-534. Evidence supporting the application of the "stash house" enhancement in *Flores-Olague* included that the defendant sold and stored drugs at his home "on a daily basis" over a three-year period. Id at 533. Additionally, in a search of the home law enforcement recovered $53,620.00 in United States currency, four firearms, five cellular phones, and other paraphernalia. Id at 534.

Other cases finding that the enhancement applies have also involved substantial drug trafficking activity at the premises as opposed to a one-off occurrence. In *United States v. Garcia,* 774 F.3d 472 (8th Cir. 2014); the Eighth Circuit found that the enhancement applied based on evidence that the defendant regularly used a detached garage on the premises to store vehicles that were used in a drug conspiracy and that these vehicles sometimes contained large quantities of drugs when they were stored in the garage. *Garcia,* 774 F.3d at 475. Similarly, in *United States v. Sykes,* 854 F.3d 457 (8th Cir. 2017); the "stash house" enhancement applied based on evidence of four controlled buys occurring at the residence over a period of a month as well as the seizure of packing

Appellate Case: 20-1487    Page: 32    Date Filed: 04/15/2020  Entry ID: 4902996

materials, $748.00 in cash, a nylon gun case, a measuring cup and a razorblade with cocaine residue being found at the time of the search. *Sykes,* 854 F.3d at 461-462.

McArthur does not dispute that the evidence shows that at various points in time the "white house" on Maple Avenue was used to manufacture or distribute controlled substances. However, Chris Wuori maintained the "white house," not McArthur. The "white house" belonged to Wuori's father, Rick Wuori.

McArthur does not dispute that he stayed at this address for a brief period of time including during December of 2010. Other people, including Christopher Wuori, lived there at the same time. The substantial drug trafficking that may have occurred at the "white house" happened when Christopher Wuori lived there and maintained the premises; not McArthur. McArthur never maintained the premises and the enhancement does not apply to him.

McArthur does not dispute that on one occasion during one council meeting on December 2010, he told other Native Mob members that, in conjunction with their coming to the next council meeting to be held in Cass Lake, they could stay at this house, where he was staying at the

26

time, and "fucking' cut their shit up nigger." See RPSR3 ¶269.

However, this incidental use of the premises so *others* could distribute

narcotics does not come even close to making the manufacturing or

distribution of narcotics one of the defendant's <u>primary</u> uses of the

residence.

For this enhancement to apply, there must be specific proof that the

defendant, McArthur, maintained the premises for the purpose of

distributing or manufacturing drugs. Proof that others used the

premises for that purpose is not sufficient. *Miller,* 698 F.3d at 706. The

PSR bases its finding that the "stash house" enhancement applies solely

on the grounds that "the defendant was recorded encouraging members

of the Native Mab gang to use his residence to prepare drugs for

distribution." See RPSR3 ¶343. Even if these other members took

McArthur up on his offer, the drug distribution was something they did,

not McArthur.

While McArthur may have gone to Wuori's home, he did not

maintain the premises when the substantial drug trafficking activities

occurred. The evidence did not show that any cooking of powder cocaine

into crack happened while McArthur stayed there. None of the

27

witnesses who testified about the use of the "white house" for drug trafficking established that McArthur was living there at the time or otherwise then maintaining the premises. Because there is no proof that <u>McArthur</u> used the premises for drug distribution or manufacturing, the enhancement does not apply.

Any drug distribution activities that happened while McArthur stayed at the premises were incidental to his use of the premises as a temporary home. As directed by the Commentary to §2D1.1(b)(12), if one compares the frequency that the premises were used for lawful purposes as opposed to drug distribution, there should be no doubt that the enhancement does not apply. There was no evidence that <u>McArthur</u> engaged in any controlled buys on the property. Cf. *Miller,* supra (finding that enhancement applied based on evidence defendant made three controlled buys on her home and admitted to doing this on more occasions). Unlike *Miller,* there was no evidence that **substantial** drug trafficking occurred on the premises while McArthur stayed there. Indeed, a search warrant for the premises executed in February, 2011 did not result in finding any evidence consistent with ongoing drug distribution or manufacturing occurring at the home.

28

Further, it should be undisputed that McArthur used the residence in Cass Lake as his temporary home when he stayed there. Unlike other cases where the enhancement has applied, this case does not involve a house with little to no furniture or clothing suggesting it was used for nothing but drug trafficking. See *United States v. Renteria-Saldana,* 755 F.3d 856, 859-860 (8th Cir. 2014). Here, far and away, the "white house" in Cass Lake was used as a home while McArthur stayed there, a dwelling where people lived. Any use of the premises for drug distribution while McArthur stayed there was infrequent, incidental and collateral to the primary use of the home as a residence. No offense level increase is therefore warranted under §2D1.1(b)(12).

C. McArthur did not engage in a pattern of criminal conduct as a livelihood.

McArthur objected to the conclusion in ¶344 of the RPSR3 that he was subject to a two level offense level increase under §2D1.1 (b)(15)(E) for committing the offense as part of a pattern of criminal conduct as a livelihood. The Commentary to §2D1.1 at Application Note 19 explains application of subsection (b)(15)(E) in greater detail. It provides that for

29

purposes of this subsection, the terms "pattern of criminal conduct" and "engaged in as a livelihood" have the meanings given in §4B1.3. Id.

Even if one accepts for the sake of argument that Mr. McArthur engaged in a pattern of criminal conduct, the evidence did not show that such conduct was "engaged in as a livelihood." Application Note 2 to §4B1.3 defines this term as meaning that "(A) the defendant derived income from the pattern of criminal conduct that in any 12-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of circumstances show that such criminal conduct was the defendant's primary occupation in that 12-month period…" U.S.S.G. § 4B1.3, Application Note 2. Even if a defendant has engaged in a pattern of criminal conduct and derives income from that conduct, the enhancement does not apply where the defendant in the end makes little money doing so. "The Sentencing Commission did not intend a sentence to be enhanced under this section when a defendant gains a high percentage of his income from criminal conduct, yet his total income remains below minimum wage." *United States v. Nolder*, 887 F.2d 140, 142 (8th.Cir.1989).

The federal minimum wage during the time period at issue in this case was $7.25 an hour. 29 U.S.C. §206(a)(c). 2,000 times this amount is $14,500. The government did not establish, and the District Court did not find, that Mr. McArthur made even close to this amount, certainly not more than this amount, during any 12-month period. Further, the RPSR does not contain any facts that support the enhancement under §2D1.1 (b)(15)(E). The District Court therefore erred in applying this enhancement.

*III. The error in the Guidelines calculation was not harmless.*

McArthur acknowledges that his objections to the above Guidelines factors and resulting calculation are subject to harmless error analysis. See *United States v. Johnston,* 533 F.3d 972, 978 (8th Cir.2008); *United States v. Mashek,* 406 F.3d 1012, 1017 (8th Cir.2005). "The Government bears the burden of persuasion to demonstrate that the error was harmless," that is, that the error did not affect McArthur's' substantial rights. *Spikes*, 543 F.3d at 1025.

The District Court's overruling the above objections resulted in a ten level increase to the Guidelines calculation in Appellant's case taking him from an adjusted offense level of 39 to an offense level of 49. The

420 month sentence of imprisonment imposed by the District Court on Count 7 falls above the range that would apply under a corrected Guidelines calculation: with a Criminal History Category of III, and an adjusted offense level of 39, the advisory Guidelines' range is 324 to 405 months imprisonment. This Court has held that if "the sentence imposed falls within the guideline range urged by the appellant and if it is clear that the sentencing court would have imposed the same sentence regardless of whether the appellant's argument for a lower guideline range ultimately prevailed, there can be no reversible error in the sentence." *United States v. Harris,* 390 F.3d 572, 573 (8th Cir. 2004).

Here, however, the sentence imposed falls above the proposed Guidelines range and the District Court never indicated on the record that it would have imposed the same sentence if McArthur's guidelines calculation would have been different. Most importantly, the District Court never indicated that it would have imposed a total sentence of 420 months imprisonment if the Guidelines' sentence was not life imprisonment. The District Court found that a substantial variance was appropriate. Because there is no clear indication that the District Court

would not have varied downward from a range of 324 to 405 months imprisonment, the error in the Guidelines' calculation was not harmless. See *Spikes,* 543 F.3d at 1025-1026. The Court of Appeals should therefore remand the case to the District Court for resentencing.

## CONCLUSION

The District Court erred in its Guidelines calculation. The error was not harmless. Appellant's sentence should therefore be vacated and the case remanded for resentencing.

Dated this 14th day of April, 2020.

GOETZ & ECKLAND P.A.

FREDERICK J. GOETZ (#185425)
Banks Building
615 1st Avenue N.E., Suite 425
Minneapolis, MN 55413
(612) 874-1552
ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and the 8th Cir. L.R. 28A(c), the undersigned certifies that this brief complies with the page and type-volume limitation of Fed. R. App. P. 32(a)(7). The brief was prepared using Microsoft Word 2010 Century Font in font size 14, which reports that the brief contains 6,343 words. The brief consists of 33 pages.

Dated this 14th day of April, 2020

GOETZ & ECKLAND P.A.

FREDERICK J. GOETZ (#185425)
Banks Building
615 1st Avenue N.E., Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEY FOR APPELLANT

34